*E-FILED - 3/24/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRANCISCO SORIANO, | ) | No. C 08-4065 RMW (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY AS UNNECESSARY |
| vs. | ) ) | |
| BEN CURRY, Warden, | ) ) | |
| Respondent. | ) ) | |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a 2007 decision by the California Board of Parole Hearings ("Board") in finding him unsuitable for parole. Petitioner argues that the Board's denial of parole in 2007 deprived him of his right to due process because it was not supported by at least some evidence that he would be a danger to the community if released. Petitioner also claims that the Board's decision to schedule his next suitability hearing in 2012 violated his right to due process. Respondent filed an answer denying the petition, along with a supporting memorandum and exhibits. Although given an opportunity, petitioner did not file a traverse.

///

///

///

# BACKGROUND[1]

While on probation,[2] in January 1991, in the early morning hours, petitioner was leaving a bar with a 23-year old woman, Vasquez, who was the victim in this case. Petitioner had been saying that he was going to "have" her one way or another and take her back to Mexico with him. Vasquez had told people that petitioner "gave her the creeps" and she did not want to be involved with him. Later that morning, Vasquez's body was found on Ortega highway. She was nude and had been stabbed three times in and around her neck, and the initials "FS" had been carved into her chest. Her body was dirty and bloody, her panty house and panties were around her left ankle, and police observed a bloody tire iron near the body. That night, petitioner sold his car, which contained bloodstains in it, fled to Mexico and spent six weeks with his family in Oaxaca before returning to the United States. He was eventually arrested in Phoenix but lied to investigators and denied involvement in the murder.

On June 28, 1996, petitioner was convicted of second degree murder with the use of a deadly weapon (Cal. Penal Code §§ 187, 12022(b)) and was sentenced to a total term of twenty-six years-to-life in state prison. On February 15, 2007, at his first parole suitability hearing, the Board found him unsuitable for parole. Petitioner filed an unsuccessful habeas petition in California Supreme Court, which summarily denied his petition.

Petitioner filed the instant petition on August 14, 2008.

# DISCUSSION

**A.    Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the

---

[1] The relevant facts are taken from the Transcript of the February 15, 2007 Subsequent Parole Consideration Hearing. (Resp. Ex. 3.)

[2] On June 24, 1998, petitioner shot a 15-year old boy in the leg. The victim told police that he was sitting outside, talking to two friends when petitioner drove up and stopped at the curb. One of the victim's friends went to talk to petitioner. At some point, that friend ran behind a wall, yelling that petitioner had a gun. The victim looked up and petitioner fired one shot, which struck the victim in the left ankle. Two days later, petitioner was arrested but denied shooting anyone. Eventually, petitioner admitted shooting the victim. Petitioner was placed on probation.

basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. See id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340. A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the

1  petitioner's claims, the federal habeas court looks to the last reasoned opinion in conducting its
2  analysis under Section 2254(d).  See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  The
3  standard of review under AEDPA is somewhat different where, as here, the state court gives no
4  reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned
5  lower court decision on the claim.  In such a case, a review of the record is the only means of
6  deciding whether the state court's decision was objectively reasonable.  See Plascencia v.
7  Alameida, 467 F.3d 1190, 1197-98 (9th Cir. 2006).  When confronted with such a decision, a
8  federal court should conduct "an independent review of the record" to determine whether the
9  state court's decision was an objectively unreasonable application of clearly established federal
10 law.  Id. at 1198.

**B.     Issues Presented**

As grounds for federal habeas relief, petitioner asserts that: (1) there was not "some evidence" to support the denial; and (2) the Board acted unreasonably when it denied petitioner's a future suitability hearing for five years.

      1.      Respondent's Issues

In order to preserve the issues for appeal, respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions are contrary to Ninth Circuit law, they are without merit.  See Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in Superintendent v. Hill, 472 U.S. 445-455 (1985)); Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) ("some evidence" standard identified in Hill is clearly established federal law in the parole context for purposes of § 2254(d)); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole").

///

///

### 2. Some Evidence

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Hill, 472 U.S. at 457).

It is now established under California law that the task of the Board and the Governor is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. Id. at 1205-06.

In several cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In Biggs v. Terhune, 334 F.3d 910, 915-17 (9th Cir. 2003), the court explained that the some evidence standard may be considered in light of the Board's decisions over time. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Id. Although the Biggs court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." Id. at 916.

1        The Sass court criticized the decision in Biggs: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. Sass determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. Id. (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, Sass does not dispute the argument in Biggs that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. Id. Also, noting that the parole board in Sass and Irons appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes." Id. (citing Biggs, 334 F.3d at 917). Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

Here, the Board denied parole based on the circumstances of the murder, petitioner's escalating pattern of criminal conduct, petitioner's failure to develop a marketable skill and upgrade educationally and vocationally, and petitioner's inconclusive psychological report. (Resp. Ex. 3, p. 77-85.) The Board recognized that petitioner's crimes occurred when he was under the influence of alcohol and that petitioner has an alcohol problem. However, the Board expressed concern that petitioner had not completed the necessary programming to demonstrate that he will be able to remain sober if released from prison. (Id. at 82, 84.) The Board commended petitioner for participating in Alcoholics Anonymous and the Impact Program, but concluded that those positive factors did not outweigh his unsuitability for parole at this time. (Id. at 82.) The California Supreme Court summarily denied petitioner's claims.

1    This court concludes that the Board reasonably found that the circumstances of the
offense was carried out in a "cruel and callous manner." (Id. at 77.) The victim was defiled
either before or after her murder and it was apparent that she suffered, based on the three stab
wounds in her neck as well as the carving of "FS" in her chest. (Id. at 77-78.) The Board's
finding that motive was trivial compared to the seriousness of the crime was also reasonable. It
concluded that the motive was inexplicable because petitioner's explanation was that he was
drunk. (Id. at 78.) Petitioner was on probation for assault with a deadly weapon when he
committed this murder. (Id. at 79.) These facts alone amount to "some evidence" that petitioner
would present an unreasonable threat to the public if released, but there was additional evidence
in the record supporting the Board's parole denial as well. For example, although he had been
attending Alcoholics Anonymous for 13 years, he could only remember 1 of the 12 treatment
steps involved. (Id. at 36-38.) In light of the fact that petitioner's present and prior crimes were
committed when he was intoxicated, the Board's concern that petitioner needed additional
programming to deal with his substance abuse prior to becoming eligible for parole is
reasonable. While petitioner was commended for his attendance at Alcoholics Anonymous and
Impact Program in prison, the Board reasonably found these factors were outweighed by the
factors indicating that petitioner was not suitable for parole.

The record of the 2007 parole hearing demonstrates at least "some evidence" that petitioner would pose a risk of harm to society if released and that parole should be denied. See Rosas v. Nielsen, 428 F.3d 1229, 1232–33 (9th Cir. 2005) (facts of the offense and psychiatric reports about the would-be parolee sufficient to support denial). The state court's rejection of petitioner's due process claim was neither contrary to nor an unreasonable application of the "some evidence" requirement of due process. Consequently, petitioner is not entitled to federal habeas relief.

3.   <u>Five Year Denial</u>

Petitioner's challenge to the Board's decision regarding petitioner's future hearing date involves only the compliance or non-compliance with state statutes and regulations governing the setting of parole suitability hearings. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability as Unnecessary
P:\PRO-SE\SJ.Rmw\HC.08\Soriano065den.wpd    7

1  Moreover, petitioner does not provide any argument to support his conclusory claim that the
2  scheduling of his next suitability hearing in five years violated his constitutional rights. See
3  Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations are not
4  sufficient to support habeas relief).
5      In order to prevail, petitioner must show that the Board violated the Constitution, laws, or
6  treaties of the United States. Estelle, 502 U.S. at 67-68; see also 28 U.S.C. § 2254(a). None of
7  these are implicated by the Board's alleged non-compliance for the scheduling parole suitability
8  hearings. See Whitfield v. Vaughn, 2008 WL 836931 (9th Cir. Mar.27, 2008) (claim that Board
9  "failed to set a parole hearing within time frame mandated by California law" alleged only a
10  state law violation not cognizable on federal habeas review). Accordingly, petitioner's
11  allegation is not cognizable on federal habeas review.

## CERTIFICATE OF APPEALABILITY

13      The federal rules governing habeas cases brought by state prisoners have recently been
14  amended to require a district court that denies a habeas petition to grant or deny a certificate of
15  appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.
16  foll. § 2254 (effective December 1, 2009). However, the Ninth Circuit has made clear that a
17  state prisoner challenging the Board of Prison Terms' administrative decision to deny a request
18  for parole need not obtain a certificate of appealability. See Rosas v Nielsen, 428 F.3d 1229,
19  1232 (9th Cir 2005). Accordingly, any request for a COA is DENIED as unnecessary.

## CONCLUSION

21      The court concludes that petitioner has failed to show any violation of his federal
22  constitutional rights in the underlying parole proceedings. Accordingly, the petition for a writ of
23  habeas corpus is DENIED. In addition, a COA is DENIED as unnecessary. The clerk shall
24  enter judgment and close the file.
25      IT IS SO ORDERED.
26  DATED:  3/23/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge